UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MG BUILDING MATERIALS, LTD.,
EXCELLENCE MORTGAGE, LTD.,


                                        Plaintiffs,

                                                              DECISION AND ORDER

                                                              11-CV-6165L

                        v.

PAYCHEX, INC.,


                                        Defendant.
_____


**INTRODUCTION**


        This action was commenced in state court in Texas in December 2008 by MG Building

Materials, Ltd. ("MG") and Excellence Mortgage, Ltd. ("EML") (collectively "plaintiffs"), against

Paychex, Inc.  The original complaint asserted breach of contract and other claims against Paychex,

arising out of a payroll administration contract ("contract") between plaintiffs and Paychex.

        At the time that they filed the original pleading, which, in accordance with Texas civil

procedure was denominated a "petition" (Dkt. #51-1), *see* Tex. R. Civ. P. 22, both plaintiffs were

citizens of Texas, and Paychex was a citizen of New York.  The original petition also indicated that

plaintiffs' damages exceeded $100,000; although it did not expressly seek a specific amount of

damages, it alleged that Paychex's wrongful acts and omissions had caused plaintiffs to incur tax

penalties totaling $162,023.01.  *See* Complaint at 4 ¶ 4.5.  Thus, the original petition was removable

to federal court pursuant to 28 U.S.C. § 1332, which confers subject matter jurisdiction on federal

courts over actions in which there is complete diversity of citizenship between the plaintiffs and

defendants and an amount in controversy exceeding $75,000.  *See* 28 U.S.C. § 1441(a) (state court action may be removed to federal court if the action is one over which the federal court has original jurisdiction).

Under 28 U.S.C. § 1446(b), a notice of removal must generally be filed within thirty days after the defendant's receipt of the pleading.  That statute also provides that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action."

Paychex did not initially seek removal of this action.  Instead, on January 23, 2009, it filed a "Motion to Abate and to Compel Arbitration," *see* Dkt. #23-3 at 10, seeking an order that the state court abate all proceedings and compel plaintiffs to submit their claims to arbitration, pursuant to an arbitration clause in the contract.  While that motion was pending, plaintiffs filed an amended petition (Dkt. #51-2), adding allegations that Paychex had "fraudulently induced Plaintiffs to enter into service agreements that included an arbitration provision."  Dkt. #51-2 at 11, ¶ 11.4.

The state court denied Paychex's motion to abate and to compel arbitration, without prejudice, and directed that plaintiffs be allowed to "conduct discovery as to whether the arbitration provision is unconscionable in light of Defendant's business practices and whether Plaintiffs were fraudulently induced into entering into the arbitration provision."  *In re Paychex, Inc.*, No. 04-09-00145-CV, 2009 WL 1086445, at *1 (Tex. App. Apr. 22, 2009).

According to plaintiffs, during discovery, they learned for the first time that Paychex had not only breached the contract, but had engaged in a fraudulent scheme to gain access to its clients' monies in order to convert them for Paychex's own use and benefit.  On October 19, 2009, Plaintiffs filed a second amended petition (Dkt. #51-3), which alleged additional facts concerning Paychex's fraudulent activities, and asserted additional claims for fraud, breach of fiduciary duty, and conversion.  For example, plaintiffs alleged that Paychex had improperly held their funds "in order to profit from interest and investment income," and that Paychex's "scheme included 'skimming,'" whereby Paychex charged plaintiffs hidden and inflated fees for services, some of which were not

even performed. *Id.* ¶ 4.6. Although the second amended petition was again brought only by MG and EML, it also alleged that Paychex engaged in similar practices with respect to other "small to medium size business owners across the country." *Id.* ¶ 4.8. Again, Paychex took no steps at that time to remove the action to federal court.

On March 19, 2010, Plaintiffs filed a third amended petition (Dkt. #51-4). In that pleading, plaintiffs dropped several causes of action, but for the first time, they also asserted class claims on behalf of "all Major Market Services clients ... for Paychex's Taxpay Services ... at any time since 2004." *Id.* ¶ 6.1. The class claims were based largely on the same theory as the claims set forth in the second amended petition, alleging that Paychex had "failed to provide full disclosure" regarding its use of client funds, that it had converted client funds for its own use, and that it breached its fiduciary duty to its clients by misusing client funds. *Id.* ¶ 6.4. The third amended petition, which is now the operative pleading in this action, asserts claims for: (1) a declaratory judgment that the contract's arbitration clause is unenforceable; (2) conversion; (3) breach of fiduciary duty; (4) fraud; (5) "fraud by nondisclosure"; (6) class damages; and (7) breach of contract on behalf of the named plaintiffs. Plaintiffs also seek attorney's fees, pre- and post-judgment interest, and an accounting.

On April 9, 2010, Paychex removed the case to the United States District Court for the Western District of Texas. The notice of removal states that "[t]his action is removed under the Class Action Fairness Act, 28 U.S.C. § 1453 ('CAFA')." Dkt. #23-2 at 2. Paychex also stated that the third amended petition "provides new grounds for removing this case to federal court and substantially changed the character of the litigation, thereby making this case removable." Dkt. #23-2 at 1-2.

Paychex then filed a motion to transfer venue to this district. Dkt. #23-5. Plaintiffs opposed that motion, and filed a cross-motion to remand the action to state court. Dkt. #23-11. On March 28, 2011, Chief Judge Fred Biery of the Western District of Texas granted Paychex's motion and transferred the case here. Dkt. #23-1. Because Judge Biery considered the motion to transfer first, *see id.* at 2, and found that transfer was warranted, he did not rule on plaintiffs' motion to remand.

Thus, plaintiffs' motion to remand is now pending before this Court.  Since the parties' original briefs, filed in the Western District of Texas, focused on case law from the Fifth Circuit, the parties have filed supplemental briefs in this Court, citing additional case law from the Second Circuit.  *See* Dkt. #47, #49.

## DISCUSSION

### I. General Principles

### A. Removal Procedures

The procedures for removing an action to federal court are provided by 28 U.S.C. § 1446. That statute sets forth separate requirements and procedures for actions that are immediately removable when filed, and for those that are not.  If the case presented by the initial pleading is removable, then a notice of removal must be filed within thirty days from the defendant's receipt of the initial pleading.  *See* 28 U.S.C. § 1446(b).  If the action is not immediately removable when filed, then a notice of removal must be filed within thirty days after the defendant's receipt of a copy of an amended pleading "or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of [diversity] jurisdiction ... more than 1 year after commencement of the action."  *Id.*  As stated, the parties do not dispute that this case was removable when it was filed.

### B. The Class Action Fairness Act ("CAFA")

By enacting CAFA in 2005, Congress "expand[ed] the availability of diversity jurisdiction for class action lawsuits." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).  Specifically, "CAFA vests a district court with original jurisdiction over a class action where:  (1) there are 100 or more putative class members; (2) at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregated amount in controversy exceeds $5 million,

exclusive of costs and interest." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)). *Accord Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008). If those conditions are met, then, the common state citizenship of one or more plaintiffs and one or more defendants will not defeat diversity jurisdiction.

The legislative history indicates that in enacting CAFA, Congress sought to "curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 952 (9th Cir.) (citing CAFA § 2, 119 Stat. at 4-5), *cert. denied*, ___ U.S. ___, 130 S.Ct. 187 (2009). There were a number of reasons why Congress found it desirable to encourage shifting such cases from state to federal courts, but in short, Congress clearly believed that nationwide class actions involving large numbers of plaintiffs and very substantial damage claims typically belong in federal, not state courts. *See, e.g.*, S. Rep. No. 109-14 at 4, *reprinted in* 2005 U.S.C.C.A.N. 3, 6 ("the Committee firmly believes that such cases [*i.e.*, interstate class actions] properly belong in federal court"), and at 21, *reprinted in* 2005 U.S.C.C.A.N. at 27 ("The Committee believes that the federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy").

CAFA, which applies to civil actions "commenced on or after the date of enactment," *i.e.*, February 18, 2005, *see* Pub.L. No. 109–2, § 9, 119 Stat. 4, 14 (2005) (codified as Note to 28 U.S.C. § 1332), "expressly adopts the procedures of the general removal statute, 28 U.S.C. § 1446." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 756 (11th Cir. 2010). The one exception is that "[u]nlike other cases, CAFA cases may be removed more than one year after their commencement, if the other requirements for removal are satisfied." *Id.* at 756 n.11 (citing 28 U.S.C. § 1453(b)). Although CAFA thus eliminates the one-year time limit on removal actions, "a defendant must still file a notice of removal 'within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one

which is or has become removable.'"  *Bartnikowski v. NVR, Inc.*, 307 Fed.Appx. 730, 739 n.15 (4th

Cir. 2009) (quoting 28 U.S.C. § 1446(b) (2000)).

### C. The "Revival" Exception

As a general rule, if a defendant fails to timely remove a case in compliance with the

procedures set forth in § 1446, the right to remove is irretrievably lost.  *See*, *e.g.*, *Barbour v.*

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of*

*America*, 640 F.3d 599, 614 (4th Cir. 2011) ("Unquestionably, a party may implicitly waive its right

to remove a case by failing timely to file a notice of removal") (quoting *Buchner v. F.D.I.C.*, 981

F.2d 816, 818 (5th Cir. 1993)); *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 427 n.8 (5th Cir. 2003)

("a defendant who does not timely assert the right to remove loses that right") (internal quotation

marks omitted).  "[S]ubsequent events do not make [a case] 'more removable' or 'again

removable.'"  *Aleksick v. 7-Eleven, Inc.*, No. 08cv59, 2008 WL 821854, at *3 (S.D.Cal. Mar. 25,

2008) (quoting *Samura v. Kaiser Found. Health Plan, Inc.*, 715 F.Supp. 970, 972 (N.D.Cal. 1989)).

There is, however, one exception to this general rule concerning a defendant's loss of the

right to remove.  This "narrow judicially-created exception to the thirty-day rule [is] known as the

revival exception."  *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, No. 1:00-1898, 2006 WL

1004725, at *3 (S.D.N.Y. Apr. 17, 2006) ("*MTBE*").  As explained by the Fifth Circuit,

> although "an amendment of the complaint will not revive the period for removal if a state court case previously was removable but the defendant failed to exercise his right to do so," a different result generally is reached if the pleading amendment provides (1) a "new basis for removal" or (2) "changes the character of the litigation so as to make it substantially a new suit."

*Braud v. Transport Serv. Co. of Illinois*, 445 F.3d 801, 806 (5th Cir. 2006) (quoting 14C Wright,

Miller & Cooper, Federal Practice and Procedure, § 3732 at 311-48).  The gist of this principle, then,

is that where a defendant has failed to exercise its right to remove within § 1446(b)'s thirty-day

period, the defendant's right to remove can be "revived" if the plaintiff amends the complaint, and

in so doing dramatically changes the essential character of the action.

Courts have set forth the parameters of this exception in multiple ways, although the various iterations of this principle do not substantively differ in any significant respect.  It has been stated, for example, that the revival exception applies "(1) where the plaintiff deliberately misleads a defendant about the true nature of the case until the thirty-day period expires; or (2) where an amended complaint 'fundamentally alters' the nature of the case to such an extent that it creates 'an essentially new lawsuit.'"  *Doe*, 464 F.Supp.2d at 1261.

Expressing similar principles in somewhat different language, the court in *MTBE* stated that the exception applies

> where an amended pleading changes the nature of a case so drastically that the amendment in effect begins a new case. ... Where the pleading amendments do not change the target of a plaintiff's attack, the basic legal theory of the case, or the nature of the relief sought there is no revival.  Thus, where the addition of new parties, the enactment of a new law, or the addition of claims does not change the essential nature of the action, revival is not warranted. In contrast, where the newly added claims bear no resemblance to the original allegations or the parties are realigned such that, for example, co-defendants become plaintiffs, a district court may apply the revival exception.

2006 WL 1004725, at *3 (internal quotation marks omitted).  However the test is phrased, then, the essential question is whether the amended pleading can fairly be said to give rise to what is, practically speaking, a "new" lawsuit.

The primary reason for the exception lies in the thirty-day rule, the purpose of which is "to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court." *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631 (7th Cir. 2007) (quoting *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982)).  *Accord Johnson v. Heublein Inc.*, 227 F.3d 236, 242 (5th Cir. 2000).

Unfortunately, however it is defined, the exception is sometimes far easier to put into words than into practice.  One can readiliy conjure up scenarios at the far ends of the spectrum, where the

correct result is obvious.  An amendment to a pleading that merely changes a date or the spelling of

a party's name, for example, would clearly not revive the defendant's right to remove, while an

amendment that radically and thoroughly transforms the entire factual and legal basis for the action

would.  *Cf.*, *e.g.*, *Tully v. American Fed'n of Gov't Employees Local 3148*,

No. 00-CV-7664, 2001 WL 253034, at *2 (E.D.N.Y. Mar. 9, 2001) (revival exception did not rescue

defendants' untimely removal petition, where "the amendments to the complaint did not add any new

claims at all; rather, they removed a preexisting state law claim"); *MTBE*, 2006 WL 1004725, at *3

("where the newly added claims 'bear no resemblance' to the original allegations or the parties are

realigned such that, for example, co-defendants become plaintiffs, a district court may apply the

revival exception") (quoting *Wilson*, 668 F.2d at 965).

Not surprisingly, however, most of the reported cases in which the issue is presented lie

somewhere between those extremes, and it is not always easy to say whether a particular amendment

has changed the "essential nature of the action."  *MTBE*, 2006 WL 1004725, at *3.  As Judge Posner

of the Seventh Circuit has observed, "[i]t is idle to pretend" that "any of the ... formulations that the

courts sometimes use are self-defining."  Therefore, "[t]he right to revive must be determined in each

case with reference to its purposes and those of the 30-day limitation on removal to which it is an

exception, and against a background of general considerations relating to the proper allocation of

decision-making responsibilities between state and federal courts."  *Wilson*, 668 F.2d at 965.

## II. Application to this Case

Applying these principles here, I conclude that, by not filing a notice of removal within thirty

days after its receipt of the original petition, Paychex lost its right–temporarily–to remove this action.

Had plaintiffs not amended the petition, then, Paychex would have been unable to remove the action

to federal court.

I also find, however, that the filing of the third amended petition, which transformed this

from a two-plaintiff case involving less than $170,000 in damages, to a class action involving many

thousands of putative class members, and billions of dollars in damages, has effectively rendered this an "essentially new lawsuit," and that it therefore afforded defendant a new opportunity to remove, which Paychex has timely done.

In support of their motion to remand, plaintiffs make much of the fact that this case was originally removable to federal court based upon diversity jurisdiction under § 1332, and that diversity jurisdiction remains the basis for removal, albeit by virtue of CAFA, which expanded the scope of diversity jurisdiction in certain class actions.  Thus, plaintiffs argue, the third amended petition did not set forth a "new basis for removal,"since the only basis for removal, diversity jurisdiction, has been present throughout this litigation. *See Air Starter Components, Inc. v. Molina*, 442 F.Supp.2d 374, 383 (S.D.Tex. 2006) ("The revival doctrine recognizes a new removal opportunity because the claims are so changed as to be a new basis for removal; it does not allow a defendant a second chance to remove on the same basis that was earlier eschewed").[1]

---

[1]Plaintiffs also contend that the "new basis for removal" test is inapplicable here to begin with.  In support of that assertion, they note that the court in *Braud* stated that

> [a]n amendment provides a "new basis" for removal where, in a previously *non-*removable case, the only non-diverse defendant is dismissed, or where the amount in controversy is increased so as to exceed the diversity jurisdictional threshold.  In contrast, the "substantially new suit" analysis looks to whether the amendment of a previously removable suit makes it a substantially new suit so as to restart the removal window.

*Braud*, 445 F.3d at 806 n.10 (emphasis added).  Thus, plaintiffs argue, courts should only consider whether an amendment provides a "new basis for removal" when the case was previously non-removable.

That statement in footnote 10 of *Braud* is frankly somewhat puzzling, inasmuch as the text to which it relates states that

> although "an amendment of the complaint will not revive the period for removal if a state court case previously *was removable* but the defendant failed to exercise his right to do so," a different result generally is reached if the pleading amendment provides (1) a "new basis for removal" or (2) "changes the character of the litigation so as to make it substantially a new suit."

445 F.3d at 806 (quoting 14C Wright, Miller & Cooper, Federal Practice and Procedure, § 3732 at 311-48) (emphasis added).  That statement seems to suggest that the "new basis for removal" and the "substantially new suit" tests are simply alternate grounds for reviving a defendant's right

(continued...)

A considerable, long-standing body of case law, however, holds that an amendment that

substantially changes the character of a lawsuit can give rise to a new right to remove, irrespective

of whether the legal basis for removal (such as diversity or federal-question jurisdiction) is the same

as before.  *See*, *e.g.*, *Wilson*, 668 F.2d at 965 ("The courts ... have read into [§ 1446(b)] an exception

for the case where the plaintiff files an amended complaint that so changes the nature of his action

as to constitute 'substantially a new suit begun that day'") (quoting *Fletcher v. Hamlet*, 116 U.S. 408,

410 (1886)).  *Cf. Sehl v. Safari Motor Coaches, Inc.*, No. C 01-1750, 2001 WL 940846, at *4

(holding that since defendant failed to timely remove the original complaint, which was removable

based on federal question jurisdiction, defendant thereby waived its right to file a subsequent

removal even though the complaint was amended to add a new federal claim, where "the amendment

to the complaint did not change the nature of the action so as to constitute a substantially new suit,"

since the new allegations and claims were not substantially different from those in the original

complaint).

There is no litmus test for whether an amendment does so change the nature of a lawsuit.

Rather, the court must undertake a case-by-case analysis, viewing the facts before it against the

reasons for both the thirty-day rule of § 1446(b) and the revival exception.  *Wilson*, 668 F.2d at 965.

Thus, the fact that the original petition was removable on the basis of diversity jurisdiction, and that,

---

[1](...continued)
to remove a previously removable case beyond the expiration of the thirty-day removal window.
That makes sense, inasmuch as the revival exception only applies to cases that *were* initially
removable, since one cannot "revive" a right that never existed in the first place.  *See Johnson*,
227 F.3d at 241 ("The revival exception provides that a lapsed right to remove an initially
removable case within thirty days is restored when the complaint is amended so substantially as
to alter the character of the action and constitute essentially a new lawsuit"); *Haren & Laughlin
Const. Co., Inc. v. Granite Re, Inc.*, No. 6:11–cv–3242, 2011 WL 5822414, at *3 (W.D.Mo. Nov.
16, 2011) (concluding, based on the facts of that case, that "because there was no initial right to
removal, the revival exception cannot apply here"); *Columbus, Georgia v. Expedia, Inc.*, No.
4:11–CV–104, 2011 WL 4102337, at *4 n.5 (M.D.Ga. Sept. 14, 2011) ("The revival exception ...
only applies to cases governed by the first paragraph of § 1446(b)").

In any event, I find that the amendment here so changed the character of plaintiffs' claims
as to render this an essentially new lawsuit.  It is therefore unnecessary to decide whether the
addition of claims that are subject to CAFA constitutes a "new basis for removal" of this action.

by virtue of CAFA, the third amended petition also sets forth facts supporting diversity jurisdiction, does not in itself preclude the application of the revival exception. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996) ("The prohibition against removal 'on the same ground' does not concern the theory on which federal jurisdiction exists (*i.e.*, federal question or diversity jurisdiction), but rather the pleading or event that made the case removable") (*quoted in Watson v. Carnival Corp.*, 436 Fed.Appx. 954, 956 (11th Cir. 2011)).

This case provides a good example of why a simple, mechanically-applied test would be undesirable. While each of the four petitions in this case have stated facts that would support federal diversity jurisdiction, this case has undergone a drastic transformation since it was first filed. What began as a lawsuit by two plaintiffs, alleging that Paychex's failure to make timely and adequate tax payments on behalf of MG and Excellence had caused plaintiffs to incur some $162,000 in penalties, has morphed into a class action, potentially involving thousands of class members across the country, while the damage claims have grown to a whopping $15 billion, an increase of over nine million percent. *See Stewart v. EGNEP (Pty) Ltd.*, 581 F.Supp. 788, 790 (D.C.Ill. 1983) (holding that "[e]ven though [defendant] submitted itself to the state court's jurisdiction, it is now faced with a substantially new and different cause of action," since "[f]or the first time [defendant] is faced with fifty-six million dollars of personal liability, instead of an order to turn over one of its depositor's assets").

In addition, while this case still involves Paychex's alleged failure to pay, either timely or at all, taxes on behalf of its clients, plaintiffs are now alleging that Paychex has knowingly and purposefully engaged in, and that it continues to engage in, a nationwide scheme to defraud its clients and convert their funds for Paychex's own use. As the third amended petition itself states, this "action began as individual claims" by MG and Excellence, asserting that Paychex was liable for tax penalties and interest imposed by the Internal Revenue Service as a result of Paychex's acts and omissions. By the time of the third amended petition, however, plaintiffs were alleging that Paychex was "engaging in a fraudulent scheme designed to use its role as a third party payroll

administrator to gain access to client funds to convert same to its own use and for its own benefit."
*See* Dkt. #23-1 at 4.  To say that the case has not significantly changed, then, simply because a
factual predicate for diversity jurisdiction has existed throughout this litigation, is akin to saying that
an acorn does not significantly change when it grows into a hundred-foot oak tree.

A consideration of the relevant policies also suggests that the revival exception should apply
here.  With respect to the thirty-day period for removal, allowing "revival" of Paychex's removal
rights will not confer upon Paychex any "undeserved tactical advantage," since this is not a case in
which the defendant waited to "see how [it] was faring in state court" before seeking removal.
*Wilson*, 668 F.2d at 965.  It appears that most of the proceedings that took place in state court
involved the enforceability of the arbitration provision in the parties' contract, rather than the
substantive claims concerning Paychex's alleged misuse of client accounts.  Although Paychex did
lose one early battle, in that the state court directed the parties to engage in discovery concerning the
enforceability of the arbitration provision, nothing in the record suggests that the state courts
displayed any particular leanings with respect to the parties or claims in this case that would have
prompted Paychex to seek a different forum.  *Cf. id.* at 964 (removal was warranted where defendant
did not seek removal until after state courts had issued preliminary injunction in plaintiff's favor).

Nor would keeping the action in federal court result in "delay and waste of resources
involved in starting a case over [here] after significant proceedings, extending over months or even
years, ... have taken place in the [state] court." *Id.*  Although this case was pending for about a year
and four months before Paychex removed it to federal court, there is no need to go back to square
one.  Again, most of the litigation thus far has consisted of skirmishing over preliminary matters such
as arbitration, removal, and venue; the parties have yet to join battle in earnest over the heart of
plaintiffs' claims.  *See Johnson*, 227 F.3d at 242 ("Because the amended complaint starts a virtually
new, more complex, and substantial case against the Co-defendants upon which no significant
proceedings have been held, the removal will not result in delay, waste, or undue tactical advantage
to a party").

Likewise, the policies underlying the revival exception also support its application here. The general rationale behind the rule is that "a willingness on the part of the defendant to remain in a state court to litigate a particular claim should not be interpreted as a willingness on his part to remain in a state court to adjudicate a completely different claim." *Id.*

In some cases, this principle applies where the plaintiff has deliberately misled the defendant by originally asserting some relatively "inconsequential but removable federal count unlikely to induce removal," and then, once the thirty-day removal period has passed, amending the complaint to add "the true and weighty federal grounds that he had been holding back." *Wilson*, 668 F.2d at 965. As the *Wilson* court recognized, however, an intent to mislead is not a *sine qua non* for application of the revival exception, for

> [a]mendments might fundamentally alter a complaint not because the plaintiff had been trying to mislead the defendant but because new facts had come to light in the course of pretrial discovery. In such a case–where the amended complaint in effect begins a new case–using the 30-day limitation in section 1446(b) to bar removal would not serve the purposes of the limitation in any significant way.

*Id.* at 966.

That is precisely the situation here. Plaintiffs have stated, in their third amended petition, that they added the class claims after learning on March 3, 2010 of a *qui tam* lawsuit brought against Paychex in the Southern District of Florida. *See* Dkt. #51-4 at 3, ¶ 4.2. That lawsuit was allegedly based on allegations similar to those made by plaintiffs here, concerning Paychex's alleged misuse of client funds, and asserted that Paychex's wrongful actions had gained for it certain tax advantages to which it was not lawfully entitled. Plaintiffs state in the third amended petition that upon learning of that *qui tam* suit, they sought to assert class claims in this action in order to protect the rights of Paychex's clients who had been harmed by Paychex's alleged scheme, in the event that Paychex were found liable for damages flowing from its conversion of client funds. Dkt. #51-4 at 4, ¶¶ 4.3, 4.4. Regardless of plaintiff's counsel's subjective motivation, however, the fact remains that Paychex was not previously on notice that plaintiffs would be bringing claims on behalf of thousands of individuals, with damages running into the billions of dollars.

In support of their contention that the third amended petition did not so change the character of this litigation as to render it an effectively new lawsuit, plaintiffs also state that the differences between the second and third amended petitions are relatively insubstantial, aside from the addition of their class claims and allegations, which, they argue, are inconsequential because newly added class members are not considered new *plaintiffs*.

The appropriate comparison, however, is not simply between the third amended petition and the one that immediately preceded it. The Court must also take into account the allegations in the original petition. Otherwise, once the initial thirty-day removal period had expired, a plaintiff could avoid the revival exception by incrementally changing the nature of a lawsuit through a series of amendments, each relatively modest, but which collectively result in a wholesale transformation of the nature of the suit. Such a result would be inconsistent with the purposes of the revival exception and with Congress's intent in enacting CAFA. *See Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 407 (6th Cir. 2008).("CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction").

Plaintiffs' contention that the addition of class members is insignificant because new class members are not considered to be new plaintiffs is unpersuasive. In support of that assertion, plaintiffs rely on *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748 (7th Cir. 2005), and *Admiral Ins. Co. v. Abshire*, 574 F.3d 267 (5th Cir.), *cert. denied*, ___ U.S. ___, 130 S.Ct. 756 (2009).[2] Although

_____

[2]Plaintiffs also cite *Weekley v. Guidant Corp.*, 392 F.Supp.2d 1066 (E.D.Ark. 2005), in which the court held that CAFA did not apply where an action was filed as an individual action prior to CAFA's enactment, and the plaintiff sought to amend the complaint to add claims on behalf of a nationwide class after CAFA's effective date. The court in *Weekley* did not discuss the revival exception, but instead took the position that since the original complaint was filed before CAFA took effect, the date of that filing was the one and only commencement date of the action, and that CAFA therefore did not apply. *Id.* at 1068-69.

*Weekley* is, of course, factually distinguishable from the case at bar, which was commenced *after* CAFA took effect. I also note that it appears that most courts have not endorsed *Weekley*'s "absolute position that if an action was commenced prior to CAFA's effective date, no post-CAFA amendment of the pleadings can bring the Act into play." *Prime Care of Northeast Kan., LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1285 (10th Cir. 2006) (adding
(continued...)

the court in *Schorsch* did state that "[c]lass members are represented vicariously but are not litigants themselves," 417 F.3d at 750, the amended complaint in that case simply *expanded* the class definition in what had been, from the beginning, a class action. In addition, though it is not apparent from the decision in *Schorsch* what the magnitude of the expansion was, there is no hint that it was anything remotely on the scale presented here.[3]

*Abshire* is even less helpful to plaintiffs. There, the amendment sought class certification, but "[t]he proposed class definition [wa]s carefully tailored to limit the class to persons who were individual parties to the suits filed" years earlier, and the "amended complaint add[ed] not a single plaintiff of whose claim [the defendant] was not already aware ... ." 574 F.3d at 274. *See also id.* at 275 (noting that "the class comprises only individuals or successors of individuals who were parties to the suits filed in the early 1990s"). Furthermore, *Abshire*, like *Schorsch*, dealt with whether an action that was filed before CAFA took effect could be deemed to have "commenced" a second time upon the post-CAFA filing of an amended complaint. That is a different question from whether an amendment has "fundamentally altered" the nature of an action for purposes of the revival exception. *See id.* at 279 ("whether an amendment to a complaint satisfies § 1446(b)'s test for removability is not determinative of whether a new suit has been commenced for purposes of CAFA").

Neither *Schorsch* nor *Abshire* is controlling here, then. In any event, I conclude that even if the Court were to adopt the position that putative class members are not "plaintiffs," the result here would not change. The issue is not whether the newly added class members are "plaintiffs," but

---

[2](...continued)
that "[m]ost courts ... concede that the addition of a new claim sufficiently distinct from prior pleadings may commence a new action removable under CAFA by the affected parties").

[3]I also note that the Seventh Circuit has itself limited the holding of *Schorsch*, holding in *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755 (7th Cir.), *cert. denied*, 549 U.S. 816 (2006), that an amendment adding new claims against an existing defendant, of which the defendant had no prior notice, "commences new litigation" for purposes of CAFA, and that *Schorsch* simply stands for the proposition that "routine changes in class definitions–the sort that relate back to the original pleading for limitations purposes–do not 'commence' new actions." *Id.* at 757-58.

whether the action has been so dramatically changed as to revive, out of fairness concerns, defendant's right to remove it. *See id.* at 280 ("Section 1446 protects a plaintiff's choice of forum from a defendant's untimely effort to remove unless the defendant could not have removed the case before *or did not have the same incentives to remove it*") (emphasis added). *See also Leal v. Government Employees Ins. Co.*, No. M-09-228, 2009 WL 4852670, at *6 (S.D.Tex. Dec. 14, 2009) (where the amended pleading "add[ed] a plaintiff and proposed class members of whose breach of contract claim Defendants were not aware," amended pleading commenced a "new civil action" under CAFA); *Plummer v. Farmers Group, Inc.*, 388 F.Supp.2d 1310, 1315 n.5 and 1316 (E.D.Okla. 2005) ("The change to the litigation wrought by the Amended Petition is sufficiently significant to constitute a new 'commencement' of an action" for purposes of CAFA, regardless of whether newly-added class members were "litigants," since there were numerous factual differences among the plaintiffs). *See also Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401, 405-06 (6th Cir. 2007) ("In determining whether the addition of class claims constitutes the assertion of new claims by additional parties, other courts have recognized that 'notice from the initial [individual] complaint ... cannot serve as 'adequate' notice of claims on behalf of all plaintiffs who may someday fall within the class definition. On the facts alleged, we agree'") (quoting *Plummer*, 388 F.Supp.2d at 1315) (additional internal quote omitted).

It is also noteworthy that during the state court proceedings, plaintiffs' counsel made statements expressly disavowing any intention to file class claims in this action. On June 8, 2009, for example, during an appearance in state court, plaintiffs' counsel stated, "I haven't mentioned a class acton since I called him [*i.e.*, defense counsel] in January and said, Hey, do you know about the class action in California? I don't know why he keeps saying I keep mentioning it." Similarly, on October 5, 2009, in the course of another court appearance, plaintiffs' counsel stated, "He [*i.e.*, defense counsel] said I'm trying to get together a class-action. Judge, there is already a class-action

on these issue [sic].  I can't bring a class-action, there is already one pending in New York."  Dkt.

#24-1 at 7.  A short time later, plaintiffs' counsel repeated, "I cannot bring a class action."  *Id.*[4]

Plaintiffs contend that their counsel did not make these statements with any intent to mislead

Paychex as to the true nature of this lawsuit, and that the decision to assert class claims in the third

amended petition "was not part of some nefarious scheme."  Plaintiffs' Reply (Dkt. #24-3) at 8.  As

stated, however, a subjective intent to mislead is not always necessary for the revival exception to

come into play, since an action can be fundamentally altered by amendments that are occasioned not

by deviousness but by "new facts [that have] come to light in the course of pretrial discovery."

*Wilson*, 668 F.2d at 966.  It would serve no more useful purpose to bar removal in that situation than

where plaintiffs had purposefully deceived the defendant.  *Id.*  Whether it is unfair to bar a defendant

from seeking removal of an amended pleading does not depend on whether the amendment was the

product of duplicity, but on whether the amendment so changed the nature of the action as to render

it an effectively new claim.  *Johnson*, 227 F.3d at 242.


### III. Effect of Defendant's Motion to Compel Arbitration

In addition to failing to seek removal within the thirty-day period of § 1446(b), a defendant

can also waive its right to remove by taking actions in state court that indicate its consent to submit

to that court's jurisdiction, and to abandon its right to a federal forum.  *See* Moore's Federal Practice

3d, § 107.18[3][a] (2011) .  As explained by the Court of Appeals for the Eleventh Circuit, a state

court defendant may

> lose or waive the right to remove a case to a federal court by taking some substantial
> offensive or defensive action in the state court action indicating a willingness to litigate in
> that tribunal before filing a notice of removal with the federal court.   ... [Waiver will not

---

[4]The references to a class action in California and New York were apparently allusions to
*Ironforge.com v. Paychex, Inc.*, 09-CV-6264, which was filed in the Central District of
California in October 2008 and transferred to this district in May 2009.  That action was settled
and dismissed in December 2011.

occur], however, when the defendant's participation in the state action has not been substantial or was dictated by the rules of that court ... .

*Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1246 (11th Cir. 2004) (quoting Charles A. Wright, et al., 14B Federal Practice & Procedure § 3721 (2003)). Whether the defendant has waived its right to remove based on such "active participation" must be made on a case-by-case basis. *Id.* (quoting *Hill v. State Farm Mutual Automobile Ins. Co.*, 72 F.Supp.2d 1353, 1354 (M.D.Fla. 1999)). *See*, *e.g.*, *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428-29 (5th Cir. 2003); *Resolution Trust Corp. v. Bayside Dev.*, 43 F.3d 1230, 1240 (9th Cir. 1994); *Hill v. Citicorp*, 804 F. Supp. 514, 516-17 (S.D.N.Y. 1992).

In the case at bar, plaintiffs contend that Paychex waived it right to remove by moving in the state courts to compel arbitration of plaintiffs' claims. Paychex moved to compel arbitration *before* the filing of the third amended petition, however. As stated, "a willingness on the part of the defendant to remain in a state court to litigate a particular claim should not be interpreted as a willingness on his part to remain in a state court to adjudicate a completely different claim." *Johnson*, 227 F.3d at 242. Even if the motion to compel arbitration could be interpreted as a sign of Paychex's "willingness ... to remain in" state court, then, that should not bar Paychex from later seeking removal based upon an amended pleading that so substantially changed the character of this action as to render if an effectively new lawsuit.

Furthermore, while plaintiffs do cite some district court authority that seeking to compel arbitration can give rise to a waiver of the right to remove, *see* Plaintiffs' Reply Brief (Dkt. #24-3) at 8-9, the more persuasive view is to the contrary, particularly where, as in this case, the defendant did not otherwise take action to defend against plaintiffs' claims in state court. *See*, *e.g.*, *Category 5 Mgmt. Group, LLC v. National Cas. Ins., Co.*, No. 09-00633, 2010 WL 2330305, at *4 n.5 (S.D.Ala. May 20, 2010) ("the right to removal [i]s not waived by the filing of a motion to stay and compel arbitration"); *Tillis v. Cameron*, No. 1:07-cv-0078, 2007 WL 2806770, at *4 (M.D.Ala. Sept.

25, 2007) ("the filing of a motion to stay and compel arbitration has ... been found insufficient to waive the removal right") (citing cases).[5]

## CONCLUSION

Plaintiffs' motion to remand this action to state court (Dkt. #23-11) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        January 23, 2012.

---

[5]I also note that one of the two cases cited by plaintiffs, *McKinnon v. Doctor's Associates, Inc.*, 769 F.Supp. 216 (E.D.Mich. 1991), is distinguishable, inasmuch as the defendants in that case had brought a proceeding in state court to compel arbitration *before* the plaintiffs filed their complaint in a different venue within the same state court. *See id.* at 217.  Thus, the defendants' "actions indicated an intent ... to submit to the jurisdiction of the state court," in a manner that has not occurred here. *Id.* at 220.